Thanks for being here. We have, depending on how you count, three or four cases for argument. Two different docket numbers, but we're the same parties. In one case it's not entirely clear. We'll know as the day progresses whether we'll be arguing. But we're going to start with Wexler v. Hasbro, docket number 22741. Mr. Zimmerman. Good morning, Your Honors. May it please the Court, my name is Philippe Zimmerman. I'm with Moses & Singer, and we represent the appellant plaintiff David Wexler in this matter. The primary issue presented on this appeal is whether the district court erred in granting appellee defendant Hasbro's motion for summary judgment, dismissing Mr. Wexler's claims for breach of an employed contract unfair competition and misappropriation related to Hasbro's use of Mr. Wexler's idea for a Hasbro Classics mashup collection. And this is a serious business, although it's gameplay. Obviously Hasbro is a major company, and Mr. Wexler is a professional toy and game inventor. He comes by this naturally, it's the family business. His father, Howard Wexler, is the inventor of Connect Four and hundreds of other well-known games and toys. Beginning in 2007, Mr. Wexler repeatedly presented to Hasbro his idea that Hasbro should bring to market a branded collection of games in which each game in the collection would combine the play pattern, which is how the game is played, of two Hasbro Classics. Hasbro controls most of the leading games that people of a certain generation know, be it Scrabble, be it Monopoly, be it Connect Four, be it Risk. There are several dozen of these Hasbro Classic games. And Mr. Wexler brought to them an idea which had never been done before. To be clear, Mr. Wexler is not claiming that he came up with the idea of combining games to create a new game. Mr. Wexler is not claiming that he had the idea of putting games in a collection. That's not what this case is about. This case is about the fact that Mr. Wexler had a unique idea which had never been done in the decades in which these games were out there. He came to Hasbro and said... The idea of a mash-up, however, is not unique, right? I mean, other games have been combined in certain ways so that there have been mash-ups, generally speaking, right, in the industry. Absolutely, Your Honor. There is no dispute that the concept, whether they were called combination games or mash-ups, is a separate issue which is not really central to the argument today. But the fact that games could be combined is not disputed. Why doesn't that go to the question of novelty? What is novel about doing this? The novelty is not... The novelty of having two games and then finding a way to push them, put them together and have a combined game or a game that has features from each in it. There would be absolutely no dispute today if that was Mr. Wexler's idea that he had presented. But Mr. Wexler's idea was a collection of games in which Hasbro would take classics together and combine them then repeatedly and it was to be a branded collection which was a critical element of the game, of his idea, excuse me, that the district court disregarded. The reason it's critical is... What makes that different from just the idea of joining games? There had never before been a collection of games in which classics had been combined and that those combined... That might be true of any particular game that has never been combined but that doesn't make the idea to combine that with another game novel. If the idea of combining games and gameplay in general, gameplay has been done regularly, how does that make that novel? The novelty is the collection aspect which is what Mr. Wexler brought to Hasbro was the idea that you could take classics repeatedly and create new brand equity. So it's the idea that there's a collection of games that's novel? It's not a collection, it's specifically how Mr. Wexler was teaching Hasbro to do this here which was it was not coming out with a collection of monopoly combined with a variety of different... But Hasbro didn't use any of his specific game combinations, did they? No, they did not use his... So then the fact that they used different game combinations somehow makes them using his idea because they fall within this collection idea? Well, that is exactly... His idea was for a collection and he provided... This seems kind of murky to me, I have a hard time getting my hands on this. Okay, well... On the idea itself. If I might, I'll try to explain... You might, go ahead. What was driving Mr. Wexler's thought process here. It was not simply taking two games and creating a mash-up or taking two classics. It was... A company like Hasbro works by exploiting the intellectual property it possesses. It puts out brand extension, line extensions. What Mr. Wexler delivered to them was a way they had never done in their decades of experience of creating a brand. And this was a new brand that did not use the names of any of the other Hasbro classics. He proposed a name, the Hasbro Classic Mash-up Collection. And that was intentional in the sense that the key issue was that it was classics in games. It was not any particular game. So that they could develop equity and take these... This line, and you can see it's exactly what Hasbro did. In 2019, when they first came out with the line, they came out with four games combining eight different classics. In 2020, they came out with four more games in this collection, in their collection called Game Mash-ups. And again, they did not use the names of any of those eight games in the collection name. Because what had been created was the Game Mash-ups Collection, which had never existed a line of this sort before. And every other collection... In your brief, you define the idea, as I see it, as the new games combining the familiar names and play patterns of two Hasbro classics and a brand name and associated image that should be used on a collection of products that's not associated with any specific Hasbro classic. What is novel about this? Why is it... I mean, if you're looking at novelty, don't you look at generality, commonality, the lack of uniqueness, matters of that sort? Absolutely. Those are factors identified. Just another way of doing business. Respectfully, the description of the argument isn't failing to notice or recognize that you just read to me the branded collection aspect. The fact that Mr. Wexler explained to Hasbro exactly what types of games should be put in and how those games should be included in the collection is an important element. But the essential element of this idea was the branded collection, which had never been done before with these types of products, where you were going to develop equity in that brand itself. Why is that the whole purpose of a mash-up? You develop... You use brand names, put them together in some way. The brand is continued, but it's now an effective derivative of the earlier... Absolutely. If they were combining two games and put those out without another brand. What Mr. Wexler brought to Hasbro... If you took Hasbro... If you took Monopoly and Scrabble, for instance, and just put them together and said, OK, that's a mash-up. There is no claim by Mr. Wexler that that's his idea. His idea here was you don't just do Monopoly and Scrabble. You do Risk and Connect Four. You combine... You put them all under a particular brand. And he explained to Hasbro how you would do it. Rather than Hasbro simply saying on a one-off basis we're going to combine two games and create this or we're going to take Monopoly and combine it with five other games. Mr. Wexler had the idea which had never been done before. It's undisputed that Hasbro had never done it or even thought of it, evidently. Ron Weingartner, the expert that was retained by the plaintiff in this case, who was a former Hasbro Inventor Relations representative, which is a nice name for someone who's a business development person, essentially confirmed his view that in the toy industry he believed  So can I ask a question about the legal standard as it relates to the contract claim? We had this decision in Nadel and Adele on the child-parent housing law in the early 2000s in which we concluded that New York courts had narrowed or changed, I guess, the description of what it means to be novel in the context of the contract claims, meaning novel to the buyer. Since that time, lower New York courts    what was going on in New York law. What's your understanding of the standard as it relates to the child-parent housing law? Well, I think the standard has always been in the state of the standard we should apply. My understanding is the Second Circuit's prior decision in Adele remains good law. It has been followed by district courts since the time this court decided that issue and there has been no decision of the Court of Appeals in New York that has challenged that determination. So the question that we're asked, I think, if I understand it is, on the contract claim, is there a dispute of fact Could a reasonable jury conclude even if we might not agree with them that the idea of a branded product line using some of the elements including the naming and maybe some of the imagery that the types of imagery that he suggested is novel. Is that the nut of this case? Yes, Your Honor. And it's got to be novel from the contract perspective to Hasbro? Certainly, although there is a misappropriation claim and we believe the idea is generally novel and that it's never been done. There is a reality here that this could not be done by any other toy company essentially because Hasbro controls the Hasbro clients. Although, theoretically, if another company had come out with a product line that could be novel at the time he pitched it, but then let's imagine that between the time he pitched it and the time Hasbro actually came forward with the product line, culture had evolved to the point, when mashups had become so ubiquitous that the notion of a product line built around mashups no longer could reasonably be characterized as novel. Do we ask the question of novelty from the perspective of the 2007 pitch or from the perspective of the time when Hasbro actually came out with the product line? I believe it's appropriate to treat it as to the times that it was being pitched and whether that resulted because that idea was presented and was subsequently used and one of the elements that we will be required to prove at trial ultimately in this case is use of the idea. There is a contention in this case of independent creation which we believe Hasbro can present whatever arguments they want on that issue but the fact is we believe that the decision makers critically involved in proceeding with this were more common in society after 2007 which I'm not disputing certainly in the musical realm and other areas and Mr. Westwood was inspired by mashups the concept of a collection of games of this sort was still novel until the time it came out by Hasbro in fact in 2019 when that collection was released the bloggers and other folks in the toy business specifically commented on the new and creative aspects of this game line up with a series of products with that I'm trying to figure out what point the chain breaks once he's pitched that is he forever going to be entitled to I would not contend it would go on forever that having been said however where there's a clear connection in time he was proposing this idea repeatedly as late as 2015 he said the use of the word mashups is indicative of the source of the inspiration for the idea but it's not a critical element of the idea I think we've heard plenty and we'll hear back from you afterwards thank you when I said plenty I didn't mean like oh we've heard it an additional time Ms. Batliner good morning please the court I'm Courtney Batliner Holland and Knight on behalf of Hasbro thank you for coming so your honors landed directly on the key issue in this case and that is that Wexler is relying almost entirely on the position that his idea for a branded collection of Hasbro games each of which combines the names and play patterns of two Hasbro classics that that idea is novel simply because it has never been done before this court has been very clear on that and that just is not the test for abrogated from the perspective of the presidential to my understanding superseded would mean that it's not good law at all and abrogated would mean that you know some aspect of it has been thank you so in Murray this court affirmed summary judgment plaintiff's idea for family sitcom portraying non stereotypical black family was not novel even though such a program had never been made before stated this was actually a breakthrough and it was an innovative decision to broadcast the show but this court explained the mere fact that such a decision has never been made does not necessarily mean it is novel and not every good idea is a protectable novel idea what what do we do again we're not this we're not the jury we're trying to decide whether a jury could reach this conclusion what do we do with the fact that Hasbro when he pitched the idea didn't say that's not an novel isn't that a fact that suggests perhaps it was novel it suggests that the inventor relations department individual may have believed it was a good idea but Hasbro inventor relations may bring in lots of ideas that are for for lots of reasons other than that they are novel within the meaning of the law that's not a Hasbro inventor relations department individual's job to know whether something is novel in the eyes of New York law and it's not their position to evaluate in a real world sense whether this is obviously not an idea that came out of nowhere it's a twist on an existing idea and at some point a twist we recognize cases where a new twist on an existing idea can be novel I'm trying to figure out why that isn't evidence that it was again it may be evidence they thought it was a good idea but it's not their job to know what the truth is so whether that individual thinks it's new or new and good or just good the issue is a law issue right right and it may be that they think the idea is just interesting in the game industry as in a lot of industries it may be a good idea to recycle an old concept they may have other business reasons for wanting to do  but     to  what the truth is so whether that individual thinks it's new or new it's not their job to recycle a product that they think is new or new it's not their job to recycle a product that they think is new it's not their